**WO**               NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Joseph Giannantonio,

    Plaintiff,

v.

Carolyn W. Colvin,

    Defendant.

No. CV-15-00746-PHX-JJT

**ORDER**

At issue is the denial of Plaintiff Joseph Giannantonio's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now considers Plaintiff's Opening Brief (Doc. 12, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 19, "Def.'s Br."), and Plaintiff's Reply (Doc. 20, "Reply").

**I.     BACKGROUND**

Plaintiff filed an Application on January 6, 2012, for a Period of Disability and Disability Insurance Benefits under Title II of the Act beginning December 1, 2006. (Doc. 11, R. at 90, 93.) Plaintiff's claim was denied initially on May 17, 2012, (R. at 93-95), and on reconsideration on November 26, 2012, (R. at 97-98). Plaintiff testified at a hearing held before an Administrative Law Judge ("ALJ") on September 11, 2013. (R. at 53-88.) On October 31, 2013, the ALJ issued a decision denying Plaintiff's claim. (R. at 36-45.) The Appeals Council ("AC") denied Plaintiff's request for review on March 9,

2015, making the ALJ's decision the final decision of the Commissioner. (R. at 1-3.) The present appeal followed.

The Court has reviewed the medical evidence in its entirety and provides a short summary here. In 2002, Plaintiff underwent surgery after he fell off a ladder and injured his lower back. (R. at 360.) After surgery, his condition improved and he returned to work. Plaintiff claims that at the end of 2006, he became disabled due to lower back pain, though he held several full-time jobs thereafter. In 2007, he worked for about six months as an auto body painter, and the owner terminated him "for no real reason." (R. at 38, 58.) In 2009, he worked as a mail handler/delivery driver. (R. at 38, 83.) Though Plaintiff held both of these full-time jobs after his alleged onset date, the ALJ afforded Plaintiff "the benefit of the doubt" and did not consider the jobs to be substantial gainful activity under the Act. (R. at 38.)

Though Plaintiff requests a disability determination from December 1, 2006 on, the record does not contain any medical records for treatment before 2009. On August 24, 2009, Plaintiff reported to Dr. Eric Feldman that he has experienced lower back pain for the past seven years, since his accident, and that he takes three to four Percocet per day for pain. (R. at 322.) Dr. Feldman observed that Plaintiff is obese, which the ALJ later included in her opinion as a severe impairment along with lumbar degenerative disc disease. (R. at 38, 322.) Dr. Feldman also noted that Plaintiff refused epidural steroid injections for his back pain and stated that he "had a long discussion" with Plaintiff about his pain management regimen—taking large quantities of Percocet—and that such a regimen has "no end in sight." (R. at 322.) Dr. Feldman stated he would not be willing to take over prescribing pain medications to Plaintiff and "will not be continuing them." (R. at 322.) Dr. Feldman opined that Plaintiff has a "great deal of deconditioning" and that "physical therapy would potentially do the most for him in the long run." (R. at 322.) Dr. Feldman ordered a magnetic resonance imaging scan (MRI) of Plaintiff's lower back.

A September 2009 MRI of Plaintiff's lower spine showed moderate disc space narrowing at L4-L5 and mild disc space narrowing at L5-S1. (R. at 327.) Based on those

1   results and the fact that Plaintiff had no significant radicular leg pain but did experience
2   lower back pain, Dr. Feldman explained to Plaintiff "that there is really no good
3   treatment for this other than core strengthening exercises to help off load those discs."
4   (R. at 327.) Dr. Feldman repeated that he is "not comfortable with [Plaintiff's] continued
5   use of nonopioid analgesics as [Plaintiff] is young and really there is no end in sight."
6   (R. at 327.) Despite these findings, the record does not contain any evidence that Plaintiff
7   sought physical therapy or pursued an exercise regimen.

8         The record shows Plaintiff was under the care of West Valley Internal Medicine in
9   2010 and 2011. On his first visit on June 15, 2010, Dr. Sudeep Punia saw Plaintiff and
10  noted that Plaintiff reported lower back pain and claimed he needed a refill of his pain
11  medication. (R. at 372.) On examination, Dr. Punia observed that Plaintiff had tenderness
12  in his lumbar spine area and high blood pressure, but otherwise the physical examination
13  was unremarkable. (R. at 373-74.) Dr. Punia prescribed oxycodone and blood pressure
14  medication and referred Plaintiff for pain management. (R. at 375.) Plaintiff's visits over
15  the following year were largely the same. On July 14, 2011, Plaintiff went to West Valley
16  Urgent Care, and the nurse practitioner noted that Plaintiff was "out of pain medication
17  because they were stolen from the car," that Plaintiff was "on pain medication for 10
18  years," that Plaintiff would not disclose who currently prescribed his pain medication,
19  and that Plaintiff felt "nothing helps with pain but pain medication." (R. at 405.) The
20  nurse practitioner observed Plaintiff was not in obvious pain and his gait and station were
21  normal, and she prescribed Tylenol with codeine and referred Plaintiff to a pain
22  management specialist. (R. at 407.)

23        Eleven days later, on July 25, 2011, Plaintiff went to No Appointment MD and
24  again stated his pain medications had been stolen, that he "fired his pain medication
25  doctor," and that he needed a prescription for oxycodone. (R. at 412.) The nurse
26  practitioner pulled Plaintiff's "dispense report," and it showed "multiple doctors writing
27  narcotics over the last 2 weeks." (R. at 412.) The nurse practitioner advised Plaintiff to
28  see a chronic pain management doctor and that "if he starts having withdrawal symptoms

to go to Banner Thunderbird or Phoenix St. Lukes [Hospitals]." (R. at 412.) In the blood test results associated with the visit, Plaintiff tested positive for oxycodone and opiates. (R. at 413.)

On August 3, 2011, Plaintiff saw Dr. Jerome J. Grove, a pain management specialist, who prescribed oxymorphone and oxycodone for Plaintiff's pain. (R. at 417.) Dr. Grove "advocated a balanced approach with interventional therapy and physical therapy modalities and/or alternative approaches, essentially anything to minimize the opioid dependency." (R. at 418.) Dr. Grove planned to "continue to try and wean down on the level of opioids" and observed Plaintiff "clearly has had excessive medications over the last few months." (R. at 418.) Dr. Grove "had a long discussion with Plaintiff," including "about the opioid agreement in terms of not [seeing] other pain management physicians and not taking more than what I prescribed." (R. at 418.)

No evidence exists in the record that Plaintiff tried physical therapy or any other alternative approach to managing pain after his initial visit with Dr. Grove. On August 27, 2013, Dr. Grove completed a "Medical Opinion Re: Ability to Do Work-Related Activities" form on behalf of Plaintiff. (R. at 519-26.) He opined that Plaintiff had certain functional restrictions on account of lower back pain, including a maximum ability to stand and walk for four hours and to sit for four hours in an eight-hour workday. (R. at 523.) He also opined that Plaintiff should never twist, stoop, crouch or climb ladders and rarely climb stairs. (R. at 524.)

Dr. Bill F. Payne reviewed Plaintiff's medical record and completed a "Physical Residual Functional Capacity (RFC) Assessment" form on May 16, 2012. (R. at 454-461.) He noted that Plaintiff reported his condition "improved dramatically" in February 2012 and that medication provided "significant relief from pain" in April 2012. (R. at 461.) He concluded Plaintiff had the RFC to perform light work, including standing or walking up to six hours and sitting up to six hours in an eight-hour workday. (R. at 455, 461.)

## II.   ANALYSIS

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20

C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### A. The ALJ Assigned Proper Weight to the Assessment of Dr. Grove and Properly Considered the Record as a Whole

Plaintiff disputes the ALJ's finding that when considering the combination of Plaintiff's impairments, Plaintiff's RFC allows him to perform light work. Plaintiff first argues the ALJ committed reversible error by assigning inadequate weight to the assessment of one of Plaintiff's medical care providers, Dr. Grove. (Pl.'s Br. at 9-15.) An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater*, 81 F. 3d 821, 830-31 (9th Cir. 1996)). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*

In this instance, the ALJ found that the "Medical Opinion Re: Ability to Do Work-Related Activities" form completed by Plaintiff's pain management physician, Dr. Grove (R. at 519-26), was contradicted by all the other medical evidence in the record, including some of Dr. Grove's own treatment notes. (R. at 18, 22.) The Court must therefore examine whether the ALJ provided specific and legitimate reasons for discounting Dr. Grove's assessment, supported by substantial evidence when examining the record as a whole. *See Carmickle*, 533 F.3d at 1164.

The ALJ gave little weight to Dr. Grove's assessment because: (1) the restrictions he assigns to Plaintiff are unsupported by his own treatment notes, the objective medical record, and Plaintiff's reports of activity; (2) Dr. Grove's own treatment notes and other evidence show that medication provided Plaintiff with significant relief from pain without notable side effects; and (3) Dr. Grove appears sympathetic to Plaintiff and his

- 6 -

treatment notes are conclusory and provide little explanation of the evidence relied upon. (R. at 43.) The Court finds that all of these reasons are supported by substantial evidence in the record and that they form a proper basis to assign Dr. Grove's RFC assessment of Plaintiff little weight.

Most importantly, while Dr. Grove assigned significant physical restrictions to Plaintiff in the RFC form he completed (R. at 519-26), they are not supported by his own treatment notes or by the objective medical record as a whole, as the ALJ explained in detail in her opinion. The ALJ did not find Plaintiff's subjective reports of pain credible in light of the medical and other evidence (R. at 40-41)—a finding that Plaintiff does not even challenge on appeal. *See Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) (noting that arguments not raised by a party in its briefs on appeal are waived). Most of the medical evidence in this case is based on precisely that, Plaintiff's subjective reports of pain, and if Plaintiff concedes to the ALJ's finding that those reports are not credible, then evidence supporting a finding of significant functional limitations is almost non-existent here.

To begin with, there is no medical evidence in the record whatsoever of Plaintiff's physical condition from 2006 to 2009, the first three years of Plaintiff's alleged period of disability. The ALJ, and now the Court, thus have no basis on which to find Plaintiff's RFC was limited during that period except for Plaintiff's subjective reports made years later—reports that the ALJ effectively discredits in her decision.

Even if the Court were to find that Plaintiff has not conceded to the ALJ's finding that Plaintiff's reports of disabling back pain are not credible, the evidence strongly supports that conclusion. While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). As the ALJ discussed (R. at 42), Plaintiff engaged in drug seeking behavior at least over the period from 2010

to 2012—virtually the entire period for which medical evidence exists in the record. This is an entirely appropriate basis to conclude that Plaintiff lacks credibility in his symptom testimony. *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001); *see also Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003). As the Court touched on above, numerous healthcare providers, including Dr. Grove, discussed Plaintiff's overuse of pain medication with him. (*E.g.*, R. at 322, 327, 412, 418.) In July 2011, Plaintiff reported to at least two different healthcare providers that his pain medications had been stolen in order to obtain refills, and a pull of his "dispense report" showed multiple doctors had written him narcotics prescriptions over a two-week period. (R. at 405, 412.) The ALJ also noted that these providers advised Plaintiff that he needed to address his obesity and attend physical therapy, which he never did. (R. at 42.) The ALJ's reasons for making an adverse credibility determination were specific, clear and convincing. *See Edlund*, 253 F.3d at 1157.

As the ALJ also stated, Plaintiff's reports of symptoms do not stand up against the objective medical evidence, either. (R. at 41.) In contrast with Plaintiff's subjective reports of disabling pain, a September 2009 MRI of Plaintiff's spine revealed only moderate disc space narrowing at L4-L5 and mild disc space narrowing at L5-S1, and no evidence in the record supports a finding of severe nerve root impingement. (R. at 41, 327.) Clinical visits from 2009 to 2012 repeatedly revealed that Plaintiff had normal posture and gait, no joint pain, stiffness, swelling or muscle weakness, only moderate tenderness in his lumbar spine region, and mild if any impairment of range of motion—none of which were consistent with Plaintiff's reports of intractable pain. (*E.g.*, R. at 41, 415-50.) As a result, with regard to Plaintiff's argument on appeal that the ALJ underweighed the assessment of Dr. Grove, the ALJ properly considered the "longitudinal treatment history" to find that Dr. Grove's assessment was not supported by substantial objective medical evidence.[1] (R. at 41.)

---

[1] In the Reply, Plaintiff complains that the ALJ does not explain what she meant by "longitudinal evidence" in her opinion. (Reply at 8.) According to the Merriam-Webster dictionary, in terms of information collection, "longitudinal" data (or evidence)

1    Plaintiff's other arguments that the ALJ undervalued Dr. Grove's assessment also
2 fail. As the ALJ points out with specific citations to the record (R. at 41-43), Dr. Grove's
3 assessment of Plaintiff was not consistent with Plaintiff's reports of activity or his
4 repeated reports that medication took care of his pain without notable side effects. *See*
5 *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009). The Court
6 agrees with the ALJ that Plaintiff's full-time jobs within the alleged period of disability
7 are not consistent with Dr. Grove's assessment. (R. at 40.) The ALJ also properly
8 considered that Dr. Grove's own treatment notes are cursory and conclusory and do not
9 support his conclusions in the assessment. *See Chaudry v. Astrue*, 688 F.3d 661, 671 (9th
10 Cir. 2012); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). Whether or not all of
11 these findings support an inference that Dr. Grove was "sympathetic" to Plaintiff is not
12 dispositive here. The ALJ provided clear and convincing reasons supported by substantial
13 evidence in the record to conclude that Dr. Grove's assessment of Plaintiff's physical
14 limitations deserved little weight.[2] *See Carmickle*, 533 F.3d at 1164.

### B.    The ALJ Properly Weighed Lay Testimony

Plaintiff also argues that the ALJ erred in her consideration of the statements of Plaintiff's wife, mother and friend. (Pl.'s Br. at 16-19.) An ALJ must only give "germane" reasons for discrediting lay witness testimony. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Here, the ALJ provided sufficient and germane reasons supported by substantial evidence in the record. (R. at 43-44.) To the extent the lay witnesses assessed Plaintiff's functional limitations under the Act—which goes beyond simple observations of Plaintiff's activity—the witnesses were not qualified to make such an assessment and, more importantly, the assessments were not consistent with

---

refers to observations of the same subject repeatedly over a period of time. The Court does not agree with Plaintiff that the ALJ erred by not defining the word in her opinion.

[2] As argued by Defendant (Def.'s Br. at 10-11), the Court finds meritless Plaintiff's argument that the ALJ improperly concluded that a restriction that Plaintiff take regularly scheduled breaks is consistent with her other findings; the ALJ properly discounted Dr. Grove's assessment, including that Plaintiff had to change position "frequently."

substantial objective medical evidence, as the ALJ found and the Court discussed above. These were germane reasons for the ALJ to discount the lay witness testimony, and thus the ALJ did not err. *See Molina*, 674 F.3d at 1114; *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

## III. CONCLUSION

Plaintiff raises no error on the part of the ALJ, and the SSA's decision denying Plaintiff's Application for Disability Insurance Benefits under the Act was supported by substantial evidence in the record.

IT IS THEREFORE ORDERED affirming the October 31, 2013 decision of the Administrative Law Judge, (R. at 36-45), as upheld by the Appeals Council on March 9, 2015 (R. at 1-3).

IT IS FURTHER ORDERED directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 28th day of September, 2016.

_____
Honorable John J. Tuchi
United States District Judge